IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| **JESSE CORONA** | * <br> * <br> * |
| **Plaintiff,** | * <br> * |
|  | *   Civil Case No.: SAG-25-03229 |
| v. | * <br> * |
| **SO CAL RAMP SERVICES, LLC,** *et al.* | * <br> * |
| **Defendants.** | * <br> * <br> * |

* * * * * * * * * *

**<u>MEMORANDUM OPINION</u>**

Plaintiff Jesse Corona ("Plaintiff") brings this action individually and for others similarly situated against Defendants So Cal Ramp Services, LLC; Inter-Rail Group, Inc.; and Inter-Rail Management, Inc. (collectively, "Defendants"). ECF 1. Defendants have filed a motion to dismiss the claims against them, ECF 12, which Plaintiff opposed, ECF 14. Defendants then filed a reply, ECF 21, and Plaintiff filed a notice asking this Court to disregard certain evidence that Defendants attached to their reply, ECF 22. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Defendants' motion will be granted in part and denied in part.

I. **BACKGROUND**

The following facts are derived from Plaintiff's complaint, ECF 1, and are assumed to be true for the purpose of this motion.

Plaintiff previously worked as a railroad conductor and engineer for Defendants in California. *Id.* ¶ 3. Plaintiff seeks to represent a Fair Labor Standards Act ("FLSA") Collective under 29 U.S.C. § 216(b) of all similarly situated employees of Defendants and a class under

Federal Rule of Civil Procedure 23 of all similarly situated employees of Defendants in California (collectively, "Railway Workers"). *Id.* ¶¶ 47–49, 276. Throughout his employment and that of the other Railway Workers, Defendants classified them as non-exempt and paid them on an hourly basis. *Id.* ¶¶ 33, 97. Plaintiff alleges that Defendants failed to include all remuneration that he and the other Railway Workers received, including non-discretionary bonuses and shift differential pay, into their regular rates of pay. *Id.* ¶ 87. Plaintiff and the other Railway Workers typically worked 11–12-hour shifts 4–5 days per week. *Id.* ¶ 189.

During Plaintiff's employment with Defendants, he would spend the first 30–40 minutes of his shift in meetings before proceeding to his work at the train tracks, where he would ordinarily work for at least five hours before he was allowed to break for a meal period. *Id.* ¶¶ 124–25. These meal periods frequently lasted less than thirty minutes and regularly lasted less than twenty minutes. *Id.* ¶¶ 127, 162. During their meal periods, Plaintiff and the other Railway Workers were not allowed to leave the railyard. *Id.* ¶¶ 126, 155. These unpaid meal periods were regularly interrupted either with questions from coworkers or because of backed-up schedules and time-sensitive issues that arose. *Id.* ¶¶157–59. Plaintiff further alleges that he and the other putative California class members regularly did not receive ten-minute rest periods, when Plaintiff did receive any rest periods it was regularly not until the end of his shift, and that the other putative California class members similarly received untimely rest periods when they did receive them. *Id.* ¶¶ 12, 129–31, 330. Plaintiff alleges that managerial and supervisory employees of Defendants observed Plaintiff and the other Railway Workers remain on-duty during their meal and rest periods, and Federal Railroad Administration logs and computer activity logs that tracked the timing of work performed showed that they had worked during their meal and rest periods. *Id.* ¶¶ 134, 138.

Plaintiff and the other Railway Workers were required to arrive to work approximately 10–15 minutes before their shifts to undergo a mandatory security screening, and they were not allowed to enter the railyard until they had completed the security screening. *Id.* ¶¶ 144, 173. Defendants instructed Plaintiff and the other Railway Workers to wait to clock in until 1–2 minutes before their shift start times, however, and Plaintiff and the other Railway Workers could have earned demerit points if they clocked in too early. *Id.* ¶¶ 174–75.

Plaintiff now brings several claims on behalf of himself and the other Railway Workers. Count I alleges a claim for failure to pay overtime wages under the FLSA on behalf of himself and the other putative FLSA Collective members. *Id.* ¶¶ 275–82. Count II alleges a California state law claim for failure to pay for all hours worked on behalf of himself and the other putative California class members. *Id.* ¶¶ 283–300. Count III alleges a California state law claim for failure to pay overtime and double time on behalf of himself and the other putative California class members. *Id.* ¶¶ 301–14. Count IV alleges a California state law claim for failure to permit meal and rest periods on behalf of himself and the other putative California class members. *Id.* ¶¶ 315–34. Count V alleges a California state law claim for failure to provide accurate wage statements on behalf of himself and the other putative California class members. *Id.* ¶¶ 335–48. Count VI alleges a California state law claim for waiting time penalties on behalf of himself and the other putative California class members. *Id.* ¶¶ 349–62. Finally, Count VII alleges a California state law claim for unfair business practices on behalf of himself and the other putative California class members. *Id.* ¶¶ 363–80.

## II.   LEGAL STANDARDS

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs.*

*Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

Federal Rule of Civil Procedure 15 permits a plaintiff to amend its pleading once as of right within twenty-one days of service of a motion to dismiss. Fed. R. Civ. P. 15(1)(b). A party seeking to amend its pleading after twenty-one days following service may do so "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). However, the Rule requires courts to "freely give leave when justice so requires." *Id.* The Fourth Circuit's policy is "to liberally allow amendment." *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509–10 (4th Cir. 1986). Ultimately, the decision to grant leave to amend rests in this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). As the Fourth Circuit

has stated, a proposed amendment is futile when it "is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510.

## III. DISCUSSION

### A. Motion to Dismiss

Defendants challenge Plaintiff's complaint on four grounds. They argue that (1) Plaintiff has failed to sufficiently plead his overtime claims, (2) the time that the Railway Workers spent undergoing the pre-shift security screening is noncompensable, (3) Plaintiff has failed to sufficiently plead that Defendants failed to include all forms of payment in his and the other Railway Workers' regular rates of pay, and (4) Plaintiff has failed to sufficiently plead entitlement to relief for alleged meal and rest periods violations. This Court will address each argument in turn.

#### 1. Overtime

Defendants first argue that Plaintiff has failed to plead sufficient detail to state overtime claims. To allege a violation of 29 U.S.C. § 207 for failure to pay overtime, a plaintiff must plead that (1) he worked overtime without compensation and (2) his employer knew or should have known that he had done so but failed to compensate him. *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 667 (D. Md. 2011). The Fourth Circuit has adopted "a more lenient approach" to pleading overtime claims. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 776–777 (4th Cir. 2017). Under this standard, a plaintiff need not identify any particular workweek in which he worked over forty hours. *Id.* at 777. However, conclusory allegations that a plaintiff regularly worked more than forty hours per week will not suffice; rather, a plaintiff must provide sufficient factual allegations to support an inference that he worked for more than forty hours in at least one workweek. *Id.* To do so, a plaintiff "must provide sufficient detail about the length and frequency of their unpaid work

to support a reasonable inference that they worked more than forty hours in a given week." *Id.* (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). For example, "a plaintiff's claim that she typically worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks, would suffice." *Id.* (quoting *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 243 (3d Cir. 2014)).

Plaintiff has satisfied this standard. He alleges that he and the other Railway Workers regularly worked 11–12-hour shifts 4–5 days per week, or 44–60-hour weeks, regularly worked beyond that time because of the mandatory pre-shift security screening and working during meal periods, and were not compensated for that additional time spent undergoing the security screening and during their unpaid meal periods. ECF 1 ¶¶ 189–91, 194. These factual allegations raise the reasonable inference that Plaintiff and the other Railway Workers worked overtime for which they did not receive compensation. This Court will therefore deny the motion to dismiss on this basis.

### 2. Pre-Shift Security Screening

Defendants next argue that Plaintiff and the other Railway Workers are not entitled to compensation for the time spent undergoing the pre-shift security screening. Under the FLSA, an employer need not compensate an employee for "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a). The term "principal activity or activities" includes activities that "are an 'integral and indispensable part of the principal activities.'" *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29–30 (2005)). And an activity is integral and indispensable if it is "one with which the employee cannot dispense if he is

to perform his principal activities." *Id.* For example, the Supreme Court has determined that showering and changing clothes were indispensable to the work of battery plant employees because they encountered toxic chemicals in that work. *Id.* at 34 (citing *Steiner v. Mitchell*, 350 U.S. 247, 249, 251 (1956)). In contrast, in *Integrity Staffing Solutions*, the Supreme Court determined that security screenings following employee shifts at a warehouse constituted noncompensable postliminary activities because the employer could dispense with them without impairing the ability of employees to perform their work of retrieving and packaging products for shipment. *Id.* at 35.

Plaintiff fails to plead facts showing that the security screening was an integral and indispensable part of his principal activities as a conductor and engineer. The complaint contains no allegations regarding the purpose of the security screening. Furthermore, although this Court may infer a hypothetical benefit from security screenings upon entry to most workplaces, the complaint contains no facts suggesting that security screenings were an indispensable part of the performance of Plaintiff's work at his workplace. Plaintiff's FLSA overtime claim therefore fails as to his security screening theory.

Defendants further argue that Plaintiff's security screening allegations fail to support his state law claims. Under California law, an employer must compensate an employee for all time that the employee spends subject to the employer's control. *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1048 (2020). In analyzing whether time spent engaging in a particular activity is compensable, the level of the employer's control, rather than the fact that the employer requires the employee to engage in the activity, is determinative. *Id.* at 1050. In *Frlekin*, the Supreme Court of California concluded that an employer had sufficient control over its employees during a post-shift security screening to render that time compensable because employees were confined to the premises until

7

the screening occurred, had to locate and wait for a designated individual to perform the screening, and compelled to take specific actions during the screening, like opening personal bags. *Id.* at 1051.

Plaintiff alleges that Defendants required him and the other Railway Workers to undergo the pre-shift security screening and would not allow them to access the premises without doing so. ECF 1 ¶ 15. Beyond that fact, however, the complaint contains no allegations describing the security screening. Drawing all reasonable inferences in Plaintiff's favor, this Court may infer that he and the other Railway Workers had to take specific actions during the screening, as the employees did in *Frlekin*, but without any more allegations concerning the screening, this Court cannot analyze whether Defendants exercised sufficient control during it to render that time compensable under California law. Accordingly, Plaintiff's state law claims also fail as to his security screening theory.

3. **Regular Rate of Pay Calculation**

Defendants also assert that Plaintiff has failed to sufficiently allege that Defendants excluded forms of compensation from his and the other Railway Workers' regular rates of pay such that Defendants undercalculated their overtime rates of pay. Aside from certain enumerated exceptions, "all remuneration for employment" must be included in an employee's regular rate of pay. 29 U.S.C. § 207(e). The employer bears the burden of proving that one of the exceptions applies. *Lee v. Vance Exec. Prot., Inc.*, 7 F. App'x 160, 164 (4th Cir. 2001). Thus, to state a claim based on miscalculation of regular rate of pay, a plaintiff need only allege types of payment that he receives but that his employer does not include in the regular rate used to calculate overtime. *See Heard v. W. Va. United Health Sys., Inc.*, Civ. No. 1:23-CV-64, 2023 WL 11113847, at *12 (N.D.W. Va. Nov. 15, 2023) (concluding that an allegation that the employer had failed to include

certain types of the plaintiffs' remuneration, such as crisis pay and longevity pay, in their regular rates used for calculating overtime sufficed under the Fourth Circuit's "more liberal pleading standard" for overtime claims).

Plaintiff has done so here. He alleges that "Inter-Rail uniformly failed to include all remuneration, including nondiscretionary bonuses, shift differential pay, and other amounts, into Corona's and the other Railway Workers' regular rates of pay" and that this failure resulted in "undercalculating Corona's and the other Railway Workers' overtime rates of pay." ECF 1 ¶¶ 87–88. As the plaintiffs did in *Heard*, Plaintiff has alleged specific types of remuneration that he and the other Railway Workers received but that Defendants did not include in their regular rates used to calculate overtime. This Court will therefore deny Defendants' motion on this basis.

4. **Meal and Rest Period Violations**

Finally, Defendants contend that Plaintiff has failed to allege any claims based on noncompliant meal and rest periods. In support of this argument, Defendants ask this Court to consider a copy of their formal meal and rest break policy that they attach to their motion (as well as additional evidence regarding Plaintiff's knowledge of the formal policy that they attach to their reply), arguing that that policy complies with federal and state law. The complaint makes clear, however, that it challenges Defendants' alleged practices in violation of its formal policy, rather than the policy itself, so this Court concludes that the formal policy evidence is not relevant at this stage. Defendants also contend that some of Plaintiff's allegations regarding the meal and rest periods are mutually exclusive, such as allegations that he and the other Railway Workers sometimes did not receive breaks and sometimes were interrupted with work tasks during their breaks. The complaint again makes clear, however, that although Plaintiff alleges that each type of violation occurred, they did not all necessarily occur on the same day. Furthermore, this Court

perceives no reason that Plaintiff must identify at the pleading stage any specific date on which he or the other Railway Workers suffered a meal or rest period violation. He need not do so to support his overtime claims given the Fourth Circuit standard that does not require a plaintiff to plead any specific week in which he did not receive appropriate overtime compensation, and Defendants have offered no persuasive reason to treat his claims for straight time pay or premium pay differently.

Under the FLSA, an employer need not compensate an employee during a bona fide meal period. 29 C.F.R. § 785.19. A break of about twenty minutes or less, including a thirty-minute meal period that becomes a break of about twenty minutes or less because of work interruptions, however, generally cannot constitute a bona fide meal period. *See* 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes . . . must be counted as hours worked."); *see also Acosta v. Granitech, Inc.*, Civ. No. 1:17-cv-400 (AJT/TCB), 2018 WL 11239319, at *8 (E.D. Va. July 16, 2018) (concluding that employees were entitled to compensation for the full thirty-minute meal periods in which interruptions required at least ten minutes of work). Additionally, a meal period that an employee spends predominately for the employer's benefit cannot constitute a bona fide meal period. *Roy v. County of Lexington*, 141 F.3d 533, 545 (4th Cir. 1998). An employer need not permit an employee to leave the employment premises for a meal period to qualify as predominately for the employee's benefit, but confinement to the premises during a meal period is a significant factor in that determination. *Id.* at 545–46. Whether an employee spends a meal period predominantly for the benefit of the employer is a factual determination. *Perez v. Mountaire Farms, Inc.*, 601 F. Supp. 2d 670, 682 (D. Md. 2009) (concluding that whether donning and doffing personal protective equipment rendered a meal

period predominantly for the employer's benefit was a factual question unfit for summary judgment).

Plaintiff has sufficiently stated his FLSA claim based on meal period violations. Plaintiff alleges that he and the other Railway Workers regularly had their meal periods limited to twenty minutes or less. ECF 1 ¶ 127. Such periods would not constitute noncompensable bona fide meal periods under the FLSA.

Additionally, Plaintiff alleges that he and the other Railway Workers were regularly interrupted during their meal periods with questions from coworkers and that backed-up schedules and time-sensitive issues also regularly interfered with their meal periods. *Id.* ¶¶ 157–59. Plaintiff further alleges that they were not free to leave the premises during their meal periods. *Id.* ¶ 162. The highly factual determination of whether these circumstances rendered any particular meal period predominantly for Defendants' benefit, a question that the *Perez* Court considered unfit for summary judgment, is inappropriate at the motion to dismiss stage. At this juncture, Plaintiff has sufficiently stated an FLSA claim based on alleged meal period violations.

Plaintiff also alleges violations of California law pertaining to meal and rest periods. California law requires that employers provide employees with "a meal period of not less than 30 minutes" after five hours of work. Cal. Lab. Code § 512(a); *see also Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1042 (2012) (concluding that this meal period must begin after no more than five hours of work). An employer satisfies its obligation to provide this thirty-minute meal period if it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Rest. Corp.*, 53 Cal. 4th at 1040. If the employer fails to do so, it is liable for premium pay, or an additional hour of compensation at the employee's regular

11

rate of pay, for each day that such a violation occurs. *Id.* at 1039; Cal. Lab. Code § 226.7(c). If the employer satisfies this obligation and does not require work during the meal period but nonetheless knows or has reason to know that an employee works during the meal period, the employer is not liable for premium pay but must still compensate the employee with straight pay for the time worked. *Brinker Rest. Corp.*, 53 Cal. 4th at 1040 n.19.

Plaintiff's allegations that his and the other putative California class members' meal periods frequently lasted less than thirty minutes, began after over five hours of work, and were interrupted with work, circumstances that he alleges management observed and that records demonstrated, sufficiently state claims for straight pay and overtime pay under California law. ECF 1 ¶¶ 125, 127, 134, 157–59. Plaintiff has failed to state a claim for premium pay, however, because he has not alleged that Defendants required him and the other putative California class members to work or impeded or discouraged them from taking their meal periods. Although Plaintiff alleges that he and the other putative California class members were not relieved of all of their duties during their meal periods, *id.* ¶ 162, this is a conclusory allegation that this Court must disregard.

Similarly, California law requires that employers provide a ten-minute rest period for every four hours of work and makes employers liable for premium pay if they fail to provide such a rest period. *Brinker*, 53 Cal. 4th at 1028; Cal. Lab. Code § 226.7(c). The complaint contains far fewer allegations about rest periods, and this Court concludes that it cannot sufficiently analyze this claim based on the allegations that the complaint does include. Plaintiff alleges that he and the other putative California class members regularly did not receive rest periods, when Plaintiff did receive any rest periods it was regularly not until the end of his shift, rather than within each four-hour period, and that the other putative California class members similarly received untimely rest

periods when they did receive them. ECF 1 ¶¶ 12, 129–31, 330. These allegations do not provide sufficient information to determine whether Defendants refused to relieve Plaintiff and the other putative California class members of their duties (as opposed to merely permitted them to work through their rest periods) such that they would be liable for premium pay. Accordingly, this Court will grant Defendants' motion as to Plaintiff's rest period theory.

### B. Request for Leave to Amend

In his opposition to Defendants' motion to dismiss, Plaintiff asks in the alternative that, if this Court grants any part of that motion, it allow him leave to amend his complaint. Defendants respond in their reply that amendment would be futile. As noted above, leave to amend should be denied only if "prejudice, bad faith, or futility" is present. *Johnson*, 785 F.2d at 509–10. This Court perceives none here. There is little risk of prejudice at this earliest stage of the case, and nothing about Plaintiff's conduct thus far evinces bad faith. Moreover, amending the complaint would not be futile. This Court is partially granting the motion to dismiss because Plaintiff has failed at this point to provide sufficient factual allegations about the pre-shift security screening and the meal and rest periods for this Court to analyze some of the claims based on those theories. Plaintiff has firsthand knowledge of these procedures at his former workplace and presumably can supply additional factual information. Accordingly, this Court will grant Plaintiff leave to amend his complaint within a specified period.

## IV.  CONCLUSION

For the reasons stated above, Defendants' motion to dismiss, ECF 12, will be granted as to the pre-shift security screening theory, request for premium pay regarding the meal period theory, and the rest period theory, but denied in all other respects. A separate Order follows.

Dated: February 4, 2026                                        /s/
                                                                                        Stephanie A. Gallagher
                                                                                        United States District Judge